No. 24,298.

CONSOLIDATED OIL, GAS & MANUFACTURING COMPANY, *Appellee*, v. J. F. OVERFIELD et al., *Appellants*.

### SYLLABUS BY THE COURT.

1. CORPORATION—*Receiver May Not Deal With Trust Estate for His Individual Benefit or Advantage.* A receiver for a corporation, like other managing officers, occupies a fiduciary relation toward the parties to the action in which he is appointed, including its creditors and stockholders, and because of such relation he is not permitted to deal with the trust estate for his own benefit and advantage.

2. SAME — *Action to Set Aside Deed — Procured Through Fraud — Petition States Cause of Action.* In an action to set aside a deed on grounds of fraud, the petition alleged, in substance, that defendant Overfield, while acting as receiver for a corporation in certain litigation entered into a contract to aid one D. in purchasing a controlling interest in its stock, in consideration of which there would be conveyed to Overfield the interest represented by such stock in certain real property belonging to the corporation; that, with this purpose in view, the defendants caused D. to be elected president of the corporation; that D. thereupon appointed Overfield manager in order to carry out the scheme to defraud the company; that the defendants, to consummate the fraud, caused false entries to be made in the

minute book of the corporation showing a meeting of the board of directors and the passing of a resolution authorizing the officers to convey the property in question, and the execution of a deed by the officers conveying the entire property to Overfield at a grossly inadequate consideration. The transaction, in its entirety, being carried out during the time that Overfield was receiver and manager and while defendants were in entire control of the corporation, *held* the petition stated a cause of action.

3. SAME—*Contract—Purchasing Stock—Contract Not Illegal.* A contract to assist another in purchasing the stock of individual stockholders in a corporation by one who is its receiver is a private transaction and is not of itself illegal, and the receiver is entitled to compensation from the person for whom such assistance was rendered.

4. SAME—*Authority of Officers Over Corporate Property.* Under the circumstances related in paragraphs 2 and 3 of the syllabus, the officers of the corporation had no authority or power to convey the corporate property as compensation for the assistance rendered by its receiver in a private transaction for another, and the attempt to do so was a fraud on the corporation.

5. SAME—*No Ratification of Illegal Contract—No Waiver of Fraud.* The petition examined, and *held,* that the alleged acts of the officers in attempting to convey the property of the corporation for the debt of another were not ratified, nor was there a waiver of the fraud.

Appeal from Montgomery district court; JOSEPH W. HOLDREN, judge. Opinion filed April 7, 1923. Affirmed.

*Hal R. Clark,* and *Thomas E. Wagstaff,* both of Independence, and *Silas Porter,* of Topeka, for the appellants.

*W. N. Banks, O. L. O'Brien,* and *Walter McVey,* all of Independence, for the appellee.

The opinion of the court was delivered by

HOPKINS, J.: This is an action by plaintiff to cancel a warranty deed alleged to have been procured through fraud. Defendant Overfield appeals from an order overruling a demurrer to plaintiff's petition. He contends—

*First,* That the facts pleaded do not amount to fraud.

*Second,* That plaintiff made no offer to restore defendant Overfield to his former position.

*Third,* That plaintiff waived the fraud.

1. The petition alleges, in substance, that the plaintiff is a corporation with its principal office at Independence; that, prior to June 1, 1920, defendant Overfield was receiver for plaintiff corporation in certain pending litigation; that he was discharged as such receiver June 1, 1920; that three weeks before such discharge he

entered into a written agreement with one James E. Dunn relative to the sale of a controlling interest in the stock of the company of which he was receiver; that it was therein stipulated that, should Dunn purchase such controlling interest in the stock, he would cause to be transferred to Overfield all the right, title and interest which such stock represented in a certain building owned by the plaintiff corporation; that Overfield would then furnish office room to Dunn's manager free of charge; that, to carry out the agreement, Dunn and Overfield secured the election of Dunn as president of the corporation; that following this the corporation minute book was falsely made to show a meeting of the directors of the company where a quorum was present, including Dunn, and the adoption of a resolution authorizing the sale of the property in question to Overfield for $5,000; that no such directors' meeting was held; that the resolution was false and no authority given to the president or secretary of the corporation to sell the property to Overfield; that the resolution falsely shown to have been adopted was had and done by Overfield and Dunn in an attempt to carry out and consummate the contract to cheat and defraud the plaintiff of its property; that the property, at the time of the pretended meeting of the board of directors, and since, was of the fair value of $20,000; that at the time of the alleged transfer Overfield was the manager and in full charge and control of the company's affairs, having been so appointed by Dunn, who was president of the corporation, for the sole purpose of placing Overfield in position to cheat and assist in defrauding plaintiff out of its property; that in carrying out the scheme Overfield and Dunn caused a warranty deed to the property to be executed for a purported consideration of $5,000, which was not paid, and which it was never their intention that Overfield should pay. The petition goes into much detail of the alleged fraudulent acts of the defendant Overfield which it appears not necessary here to recite.

As against a demurrer, the allegations of the petition are taken as true and should be liberally construed. The petition undoubtedly tenders an issue on which the plaintiff may recover if, upon a trial, the court finds the allegations true. The defendant Overfield occupied a fiduciary relation to the corporation during all the stages of the transaction. The alleged fraud had its inception during his receivership and was consummated when he was manager. He, acting in the capacity of manager, with Dunn, as president, had full control of the corporation. As receiver and as manager, he occupied

Oil & Gas Co. v. Overfield.

a position of trust, and as such he was bound to act with fidelity, with the utmost good faith, with his private and personal interests subordinated to his trust whenever the two might come in conflict.

In 23 R. C. L. 77, 78 this language is used:

"While a receiver is an officer of the court, he is also a quasi trustee, and occupies a fiduciary relation towards the parties to the action in which he is appointed; and both by reason of the fact that he holds the property as an officer of the court, and also occupies such fiduciary relation, he will not be permitted to deal with the trust estate for his own benefit or advantage. If he does so he must account to the persons beneficially interested in the property for all gain which he makes."

Also this language is used:

"The principle, above stated, that a receiver will be precluded from taking advantage of his position to deal with the fund or estate in his hands to his own advantage, is often applied to a purchase by a receiver without leave of court of property of which he is receiver. The rule has its foundation in grounds of public policy, and in the peculiar relations sustained by the receiver to the fund, or estate, in his hands. It denies to the receiver the privilege of becoming a purchaser of property pertaining to his trust entirely independent of the question of whether any fraud intervenes."

Overfield performed a service for Dunn for which he was entitled to compensation. Dunn became his debtor for the value of such services. He had no authority or right, however, to convey the corporate property to Overfield as a consideration for such services. The contract between Dunn and Overfield provided that Dunn should cause to be transferred to Overfield the interest represented by the stock which Overfield was to assist Dunn in purchasing. This could not be done. A stockholder has no legal title to the property of the corporation or to any separate part thereof. Moreover, the acts of the parties show that it was their intention to convey the entire corporate property for a grossly inadequate consideration and that Overfield should not even pay that. The fact that after Overfield should become the owner of the property he was to furnish Dunn office room free of charge shows that Overfield was to control the building instead of an interest therein. The various steps taken by Overfield and Dunn show a consistent course—the end in view—that Dunn, through Overfield's assistance, should procure the stock; that as a consideration for Overfield's services, he (Overfield) should receive plaintiff's building for and as commission.

As officers in control of the corporation, they were under an inherent obligation not to use their positions to advance their individ-

ual interests as against the interests of their corporation. They were bound to act for it with unselfish singleness of purpose. If there was to be a sale of this building by the corporation, it was. the duty of Overfield, as manager, and Dunn, as president, to procure for the corporation the best possible price. Instead of doing this, they caused a false entry to be made in its records showing a meeting of the directors of the company, a quorum present, and the adoption of a resolution authorizing the sale of the property in question to Overfield for $5,000. Using this false entry as a basis, they caused the deed to be executed to Overfield for a purported consideration of $5,000, which was not paid.

Under the decisions of this court, the facts pleaded constituted a fraud on the plaintiff. (*Ryan et al., v. L. A. & N. W. Rly. Co. et al.,* 21 Kan. 365; *Thomas v. Sweet,* 37 Kan. 183, 14 Pac. 545; *Stewart v. Harris,* 69 Kan. 498, 77 Pac. 277; see, also; *National Bank v. Drake,* 29 Kan. 311; *Sargent v. K. M. Rld. Co.,* 48 Kan. 672, 29 Pac. 1063; *Agricultural Society v. Eichholtz,* 45 Kan. 164, 25 Pac. 613; *Peckham v. Lane,* 81 Kan. 489, 106 Pac. 464; *Miller v. Railway Co.,* 97 Kan. 782, 785, 156 Pac. 780; *Ravlin v. A. & De K. R. R. Co.,* 297 Ill. 130; 14—A C. J. 99.)

2. Defendant Overfield contends that plaintiff made no offer to restore him to his former position; that it ratified the acts of its officers, and, therefore cannot recover. The contention is not sound. The petition alleges that the $5,000 specified as consideration in the deed had never been paid, and that, on the 11th day of July, 1921, Overfield attempted to open negotiations with a majority of the stockholders of the plaintiff corporation in an attempt to cover up the unlawful acts; that a meeting of stockholders was continued from that day to the 16th day of July, at which time Overfield "made some arrangements with the Commercial National Bank . . . by which credit was given to plaintiff company for $5,000, and without notice, and in a further attempt to carry out the unlawful agreement and defraud the plaintiff, deposited the deed in the office of the register of deeds; that when this fact was discovered by the majority of the stockholders, an agreement was made between plaintiff and Overfield which provided, among other things, that pending an adjustment between the parties the deed be delivered to the Commercial National Bank . . . that said pretended deed . . . is being held by the Commercial National Bank."

Whether or not it was within the power of the corporation to ratify the conveyance of its property to satisfy the debt of another (Dunn) need not be decided. The allegations of the petition indicate no attempt at ratification.

·In support of his position, defendant urges that this case is governed by the principle announced in *Trust Co. v. McIntosh,* 68 Kan. 452, 75 Pac. 498, and similar authorities. The McIntosh case was one to recover money paid under a contract for the purchase of real estate. In the syllabus it was stated: ·

"Relief on the ground of fraud will not be granted to one who does not seek it promptly after discovery of the fraud, and who, with knowledge of the fraud, retains the fruits of the transaction it induced."

Also,

"Money paid upon a contract induced by fraud cannot be recovered unless the contract may be rescinded; and a rescission will not be decreed to one who was himself in default at the time of the dereliction of which he complains."

If an act is done by the complaining party after discovery of the alleged fraud, toward perfecting or carrying out the contract, it is irrevocable.

In this case, however, plaintiff has received nothing from the defendants for the deed. It was not bound to accept a credit of $5,000 in the Commercial National Bank as consideration for its building. It does not appear from the allegations of the petition that plaintiff in any manner accepted such credit or ever attempted to exercise any control over it. The most that can be said of plaintiff's action is that it endeavored to stop the transaction and succeeded in having the deed held pending its legal effort to set it aside. The principles stated in *Trust Company v. McIntosh* and other authorities cited by defendant are not applicable to the facts here. It cannot be said that plaintiff "with knowledge of the fraud, retained the fruits of the transaction it induced." It did not induce the transaction, nor has it retained any fruits thereof.

In the case of *Basye v. Refining Co.,* 79 Kan. 755, 101 Pac. 658, in considering the condition of the parties where rescission was sought on the ground of fraud, it was said:

"The defendants maintain that whatever right to rescind may ever have existed was forfeited by the failure to assert it sooner, and that rescission could not be had in any event because the plaintiff by its own act had made it impossible to restore what it had received under the contract. Whether the

delay in moving in the matter was under all the circumstances so great as to amount to a bar was a fair matter for the consideration of the trial court, and no reason is seen to disturb the conclusion reached. The mere question of how much time was permitted to elapse is not necessarily determinative. The important consideration is whether the period was long enough to result in a prejudice to the other party. No change in the condition of the parties or in their relation with each other is shown to have taken place in the interval, except for the use of the oil, and that is a matter for which compensation could be readily, accurately and fully made.

"The same consideration destroys the force of the argument based upon the necessity of a restoration of the prior status. The rule that he who seeks the rescission of a contract must restore in specie whatever he has received under it is one of justice and equity, not of procedure—of substance, not of form— and must be reasonably construed and applied. All that is necessary is that the one party shall be placed in substantially his original situation and that the other shall derive no unconscionable advantage from his conduct." (p. 756.)

The law is too well settled to require discussion, that the plaintiff could not receive and retain the $5,000 and also have the deed set aside. The trial court will take proper cognizance of this matter when it is reached in its proper course.

3. Defendant contends that plaintiff, by entering into the contract of July 18, waived the fraud. We do not assent to that view. The most that can be said of the contract of July 18, is that it was an attempt made by the parties to effect a settlement. It does not indicate on its face that the parties waived or condoned the alleged fraud. This is a matter, however, which may be elucidated at the trial.

In *Circle v. Potter*, 83 Kan. 363, 111 Pac. 479, it was said:

"Before a contracting party, deceived and defrauded by another, should be deemed to have condoned or waived the fraud, by some subsequent action, it must appear that he acted with full knowledge of the deception and with the intention to abide by the contract, notwithstanding the fraud practiced upon him." (Syl. ¶ 3.)

The language of the contract, when construed together with all the allegations of the petition, cannot be judicially interpreted to mean that it was the intention of the plaintiff to abide by the contract, notwithstanding the alleged fraud. Its intent may be ascertained as a fact on the trial of the case. A cause of action was stated and the demurrer was properly overruled. The judgment is affirmed.