Victor DELANO, Individually and Derivatively on Behalf of Wichita Eagle and Beacon Publishing Company, Inc., Plaintiff-Appellant,

v.

Paul R. KITCH, et al.,
Defendants-Appellees.

Nos. 74–1897, 74–1898, 75–1012, 75–1442, 75–1443 and 75–1444.

United States Court of Appeals,
Tenth Circuit.

Argued and Submitted March 25, 1976.

Decided Oct. 1, 1976.

Paul Martin Wolff, of Williams, Connolly & Califano, Washington, D.C. (Paul R. Connolly, Jeremiah C. Collins, and Allan A. Ryan, Jr., Washington, D.C., Robert Martin and Paul B. Swartz, of Martin, Pringle, Schell & Fair, Wichita, Kan., of counsel, with him on the brief), for plaintiff-appellant Victor Delano.

Ronald K. Badger, Wichita, Kan., for plaintiff-appellant Victoria Bloom.

Charles W. Harris, of Curfman, Brainerd, Harris, Bell, Weigand & Depew, Wichita, Kan. (Lawrence E. Curfman, Jack Scott McInteer, and Sidney J. Brick, Wichita, Kan., with him on the brief), for plaintiff-appellant First National Bank in Wichita.

Wayne Coulson, Wichita, Kan., for defendants-appellees.

Before SETH, McWILLIAMS and DOYLE, Circuit Judges.

SETH, Circuit Judge.

These consolidated appeals arose from an amended complaint filed by Victor Delano against all defendants, on a cross-claim by the Executor Bank against Paul R. Kitch and Harry B. Brown, Jr., and on a cross-claim of Victoria Bloom against Paul R. Kitch. These were claims for breach of fiduciary duties. They were tried to a jury which entered verdicts in favor of the appellees. The cross-claimants and plaintiff Delano have taken this appeal.

The points urged by appellants relate to the instructions given by the trial court and the refusal to give certain instructions offered by the appellants.

The dispute arose from a contract for the sale of all the outstanding shares of stock in the Wichita Eagle and Beacon Publishing Company, Inc., a Wichita, Kansas, newspaper publishing firm, to Ridder Publications, a national newspaper chain. The contract of sale was negotiated by the defendants without the knowledge of some of the stockholders. The contract provided that Ridder Publications would buy all the outstanding stock of the Eagle-Beacon corporation for a stated price per share, and provided further that the incumbent officers and directors would resign. The minority stockholders who were not privy to the negotiations, and initial execution of the contract, were given about ten days after disclosure of the agreement in which to sign if they wished to sell to Ridder. All the stockholders signed.

The sales agreement contained a provision that defendant, Paul Kitch, would receive a commission on the sale of the shares. The total commission under the contract terms amounted to $1,215,000.00. The sales agreement also provided that the defendant Brown would be employed by Ridder Publications at the Wichita paper for a period of ten years at the rate of $65,000.00 per year. His salary had been about $40,000.00 per year.

As indicated above, a certain group of stockholders, owning about fifty-five per cent of the outstanding stock, were advised of the negotiations by the defendants. The others were not so advised, and the appellant Executor did not know of the negotiations or of a possible contract until it was signed by the inside group, and a story about it appeared in the newspaper. Appellant, Victoria Bloom, also did not know about until it was signed by the controlling group. Appellant, Victor Delano, apparently knew that a contract was being negotiated somewhat earlier, but did not know of the commission and employment elements

until the contract was being, or had been, drafted.

Mr. Kitch and Mr. Brown thus conducted all the talks relative to the stock sale. At the time they were directors of the corporation. Also Mr. Kitch was the attorney for the corporation, and Mr. Brown an officer. The issue raised on this appeal concerns the duties owed by these directors to the appellants as to the commission to Mr. Kitch and the employment of Mr. Brown included in the sales contract for the stock. More particularly the issues concern the instructions given by the trial court on the fiduciary duties of the appellees under Kansas law.

We must conclude that the instructions given did not represent the prevailing case law of Kansas on the duties owed by the directors to the stockholders in these circumstances, or on the related matter of personal profit by the directors gained in the transaction. The sale of the shares was consummated, and the issues here only relate to the asserted breach of fiduciary duty by appellees.

The facts need not be detailed at length and will only be described as to the particular points considered on this appeal.

■ One of the most significant aspects of this appeal is the clear and direct evidence that Mr. Kitch placed the opportunity for personal profit above all else in negotiating the sale of the newspaper. He was very frank in his testimony on this point, as follows:

"Q Up to, and including, the time that the $36-million offer was made by Ridder, had you had any other—had you had any other discussions with Ridder about other demands you would make before there could be an agreement, such as employment contract?

"A Very definitely.

"Q And what were those?

"A Very first meeting. Told them one demand was going to be there was going to be a broker's fee, and, by God, they were going to pay it, no subject to discuss.

"Q What did they say about that?

"A They dealt on that basis. Number two—

"Q Before you go on, did you tell them what the broker's fee was going to be?

"A I sure did.

"Q 3 percent, is that correct?

"A I told them 3 percent."

And further:

"Q Have you ever discussed with anybody, since January 1, '72, with respect to the acquisition of the assets or stock in the newspaper, the fact that any buyer would have to pay you a finder's fee or broker's fee for the selling of the newspaper?

"A I sure have. I've—

"Q And what have you told them?

"A I discussed it with a lot of people, and told them it would predicated [sic] upon them paying me a broker's fee of 3 percent.

"Q Any sale would have to be predicated upon that?

"A Yes, sir. That was my agreement that I'd get my pay that way. And it was going to come in that form."

Thus the negotiations with possible purchasers were conditioned upon the payment of a fee to Mr. Kitch by the purchasers. If they would not agree to a three per cent fee, apparently he would not discuss the sale with them. It could be presumed that this condition limited the buyers who sought to buy the stock, but in any event, this certainly placed the personal profit of Mr. Kitch first. The employment contract for Mr. Brown may be described in the same way.

The trial court did not instruct the jury on the fiduciary duty of the defendants Kitch and Brown as it related to this matter of priorities. Under the Kansas decisions, an instruction was called for as to these defendants' duties, and it was clear error not to give it.

As to the bank, the defendant Kitch was equally frank in his testimony as to the secrecy of the negotiations with Ridder. He testified:

"Q Did the bank, at any time, ever authorize you to negotiate in its name, or for the stock that its—that is titled in the bank?

"A Never did. I made sure the bank didn't hear about it, so far as I was able to.

"Q And they, of course, never authorized you to enter into any agreement binding them on that stock, or for the sale of that stock, did they?

"A I tried to make perfectly clear that I didn't even want them to know about it until they had a chance to put their signature on the contract.

"Q When is the first time the bank found out that even negotiations were going on?

"A Well, if you will confine it to when Mr. Chandler knew, that's the only thing that I know. I don't know when the Trust Department found out about it.

"Q Were your dealings with—

"A Mr.—

"Q Excuse me.

"A Mr. Chandler knew within ten minutes after the contract was signed.

"Q Was this signing—just to get my dates right—this signing was about 2 o'clock on the 28th?

"A Yes."

When the bank read about the sale in the paper, and when it was given a copy of the sales agreement negotiated by Mr. Kitch, there were ten days remaining in which to agree to the sale or to reject it. This pressure served to force consent. It is obvious that all the outsiders were faced with this same compulsion to quickly agree to sell or to become minority shareholders in a situation much different than ever before, that is with a large corporate newspaper chain as the controlling stockholder rather than a number of individuals. There was no real choice given to the bank as a practical matter if it wanted to preserve some of the value of the shares for the beneficiary. The bank secured the direction of the probate court and agreed to sell. Under these conditions, it agreed to nothing more than the sale itself. The same conclusion must

be reached as to appellants, Victoria Bloom and Victor Delano.

■ Thus appellants cannot be held to have agreed to the fee or to the employment contract. There was no disclosure made as to the other aspects of the sale. The fact the fee and the employment contract were mentioned in the sales agreement does not alter this result. It is obvious that the whole time sequence was arranged to bring about an apparent acquiescence or ratification of the fee and contract. This cannot be in view of the duty owed by Mr. Brown and Mr. Kitch to the stockholders.

Delano was not informed of the corporate meetings when the stockholders, who were privy to the negotiations conducted by Kitch, were advised of the terms of the contract. Delano did not know of the fee requirement until February 26th when Kitch told him ". . . he was going to have to pay like everybody else."

Thus the compulsion was contrived by one in a fiduciary position to create an appearance of ratification by the persons to whom the duty was owed. The trial court in refusing the instructions tendered by the appellants was in error in not instructing the jury on the consequences of their agreement to sell under these circumstances. It does not matter what this compulsion is called, as it was obviously present and effective. The instructions gave the impression that by signing the sales agreement, there automatically followed a complete ratification of everything Mr. Kitch and Mr. Brown had done. On this record, we must hold as a matter of law that there was no ratification.

There were other instructions which resulted in an incomplete charge to the jury on the law of Kansas. The sales agreement negotiated by Kitch and by Brown as the dominant shareholder included provisions for delivery of control of the corporation to the buyers. Thus under the agreement the incumbent directors and officers were to resign; the sale, by those who participated with the negotiators, was thus of the entire

corporation for all practical purposes. Under these circumstances it is clear that Kitch and Brown as directors and officers and Kitch as corporate attorney had a duty to the shareholders. The nature and extent of this duty is determined by Kansas law, and the general standards.

■ It is apparent from an examination of the Kansas decisions that the prevailing rule in Kansas sets a higher or stricter fiduciary standard required of directors and officers of corporations than in some other jurisdictions. We stated in *Blazer v. Black,* 196 F.2d 139 (10th Cir.), that the Kansas rule was somewhat different from that elsewhere prevailing. This statement was in reference to a director seeking to purchase corporate shares from a stockholder. It would not seem necessary in this diversity suit to detail the development of the state doctrine. It is sufficient to point out that in the very early Kansas cases of *Thomas v. Sweet,* 37 Kan. 183, 14 P. 545; *Mulvane v. O'Brien,* 58 Kan. 463, 49 P. 607; *Stewart v. Harris,* 69 Kan. 498, 77 P. 277; *Peckham v. Lane,* 81 Kan. 489, 106 P. 464; *Consolidated Oil, Gas & Mfg. Co. v. Overfield,* 113 Kan. 294, 214 P. 809; *Abbott v. Inland Oil,* 161 Kan. 316, 167 P.2d 287, down to *Parsons Mobile Products, Inc. v. Remmert,* 216 Kan. 138, 531 P.2d 428, the position of the Kansas courts has been clear and consistent in enforcing a very strict fiduciary duty on directors in their relation both to the corporation and to the stockholders. The court in *Parsons Mobile Products, Inc. v. Remmert,* 216 Kan. 138, 531 P.2d 428, said: "The officers and directors of a corporation occupy a position of trust, . . . with respect to the corporation and its stockholders."

■ It is apparent from the cases above cited that the directors Brown and Kitch must be held to the strict Kansas fiduciary duty to the corporate stockholders in the transaction here concerned. The instructions given by the trial court did not set forth the law in accordance with the Kansas rule. There was but one instruction on the fundamental duties of the directors and it was not complete. There was no instruction relating to the matter of personal gain to the directors derived from a sale of the nature here under consideration. The jury was not told that the directors and officers owed the "highest degree of fidelity, good faith, care and diligence," as required under *Thomas v. Sweet, supra.* Also the jury was not advised that a bare disclosure of personal profit by a director at the expense of a shareholder is not sufficient to overcome a breach of fiduciary duty as set out in *Mulvane v. O'Brien, supra.* The instruction as to the broker's fee was worded to convey the idea that if the acceptance of the fee by a director was revealed in any way, it would be sufficient to overcome the consequences of the breach of duty, but this is not the rule in Kansas. Proper instructions were tendered by the appellants, but refused by the trial court. In a related matter, instruction No. 32 given by the court on this subject was contrary to Kansas law in that in effect it directed the jury to eliminate the breach of fiduciary duty by the personal gain of Kitch as to anyone who signed the sales agreement. This point is elsewhere herein considered.

Thus we must hold that the jury was not properly instructed on the fiduciary duties of a director or officer under Kansas law, and that this was reversible error.

■ The appellant objected during the course of the trial to the testimony of John C. Frank, who previously was her attorney in representing her in connection with this sale of the newspaper, and in the preliminaries of these proceedings. He was permitted to testify as to two or three telephone conversations with Paul Kitch on behalf of Victoria Bloom, and particularly as to her position in the impending sale of the paper. Objection was made to this testimony based on the attorney-client privilege generally and based on the Kansas statute on the subject. The testimony was clearly relevant to the issues, and was also clearly within the subject of his representation at the time. Whether or not the Kansas statute should be applied, this testimony was not admissible and error was committed in overruling the objection.

The appellants object to the manner in which the trial judge handled the instructions, and more particularly urge that the instructions actually given were different in several material respects from those discussed with and given to counsel theretofore. Thus it is urged that Rule 51, Fed.R. Civ.P., was not followed.

 It is obvious that minor variations between the instructions given the jury and those discussed with counsel cannot be complained of, but if the differences are great, there can be error. We have examined the instructions given, and compared them with those which the court indicated to counsel it would give to the jury, and we must conclude that the variations were substantial to the degree that counsel were not effectively or specifically informed of the content of the instructions the court intended to give in order to permit counsel to argue the case intelligently. *See Downie v. Powers,* 193 F.2d 760 (10th Cir.); *Dunn v. St. Louis-San Francisco Ry.,* 370 F.2d 681 (10th Cir.). This constituted reversible error.

The judgment of the trial court must be set aside and the case remanded for a new trial as to all appellants.

IT IS SO ORDERED.