**Victor DELANO, Victoria Bloom, and First National Bank in Wichita, Executor of the Estate of Marcellus M. Murdock, Plaintiffs-Appellees, Cross-Appellants,**

v.

**Paul R. KITCH, Defendant-Appellant, Cross-Appellee,**

**and**

**Harry B. Brown, Defendant-Appellee.**

Nos. 79–1065 to 79–1068.

United States Court of Appeals, Tenth Circuit.

Oct. 23, 1981.

Rehearing Denied Dec. 8, 1981.

---

992

John F. Eberhardt and James D. Oliver, Wichita, Kan. (Robert C. Foulston, Wichita, Kan., with them on the brief), of Foulston, Siefkin, Powers & Eberhardt, Wichita, Kan., for defendant-appellant and Cross-Appellee Paul R. Kitch.

John M. Mason, Washington, D.C. (Paul Martin Wolff, Washington, D.C., with him on the brief), of Williams & Connolly, Washington, D.C. (Paul B. Swartz of Martin, Pringle, Fair, Davis & Oliver, Wichita, Kan., of counsel), for plaintiff-appellee, and cross-appellant Victor Delano.

Ronald K. Badger, Wichita, Kan., for plaintiff-appellee, and cross-appellant Victoria Bloom.

Charles W. Harris of Curfman, Harris & Weigand, Wichita, Kan., (Jack Scott McInteer, Wichita, Kan., with him on the brief) for plaintiff-appellee, cross-appellant First National Bank in Wichita.

John M. Kobayashi, Denver, Colo. (Donald C. McKinlay, Denver, Colo., with him on the brief), of Holme, Roberts & Owen, Denver, Colo., for defendant-appellee Harry Britton Brown, Jr.

Before DOYLE, McKAY and LOGAN, Circuit Judges.

LOGAN, Circuit Judge.

These consolidated appeals arise out of a diversity action three shareholders of the Wichita Eagle and Beacon Publishing Company brought for monetary recovery from Paul R. Kitch, a director, officer, and lawyer for the corporation, and Harry Britton Brown, Jr., a director, officer, and shareholder, for breach of fiduciary duty in a transaction involving the sale of all of the corporation's stock to Ridder Publications, Inc. (Ridder). After trial a jury awarded the plaintiffs recovery and punitive damages against Kitch and held Brown jointly liable for some of the award against Kitch. The trial court granted a new trial on the issues of punitive damages and Brown's joint liability. Finding no just reason for delay on the other jury determinations, the trial court entered judgments pursuant to Fed.R.Civ.P. 54(b) permitting appeals by

Kitch and cross-appeals by plaintiffs Victor Delano, Victoria Bloom, and the First National Bank in Wichita as executor of Marcellus M. Murdock's estate.

The principal issue in these appeals is whether Kitch owed and breached a fiduciary duty to the suing minority shareholders. Other issues concern the law of the case, alleged trial error, prejudgment interest, and whether Ridder's contract with Brown assuring his continued employment as an officer of the publishing company breached Brown's fiduciary duty to the shareholders.

The essential facts are largely undisputed. The Wichita Eagle and Beacon Publishing Company publishes the only daily newspaper in Wichita, Kansas. Colonel Marshall Murdock founded the newspaper in 1872 and ownership remained in his family until the sale to Ridder. At the time of the sale, defendant Brown was a director and president of the company and was in charge of daily operations. He owned 20,-000 of the 60,000 outstanding issued shares, and the following parties owned the remainder of the stock: plaintiff Delano, 10,-000 shares; plaintiff First National Bank, 10,000 shares held as executor of Marcellus M. Murdock's estate; plaintiff Victoria Bloom, 2,000 shares; Katherine Henderson, 10,000 shares; and six other descendants of Murdock, 8,000 shares in various amounts. Defendant Kitch was neither a Murdock family member nor a shareholder, but he was a director, the assistant secretary, and the principal lawyer for the corporation.

In conversations that did not include any of the plaintiffs, Brown and Kitch discussed finding a buyer for the stock of the corporation. Brown apparently believed Kitch possessed special bargaining skills and asked Kitch to negotiate a sale. Kitch was willing to find a purchaser, but demanded the

right to require the purchaser to pay him a 3% "finder's fee." Brown agreed. Kitch then sought a buyer willing to pay cash for all of the stock and willing to employ Brown for ten years at $100,000 per year. During his search and until he successfully negotiated a sale, Kitch continued to serve as director, assistant secretary, and legal counsel to the corporation.

Kitch obtained an attractive offer from Ridder: all of the corporate stock for $42,-000,000,[1] or any amount above 32,000 shares at a pro rata price. The offer included for Kitch a 3% commission on all shares tendered,[2] and for Brown a ten-year employment contract at $65,000 per year. By the time Ridder executed the contract, several shareholders other than the plaintiffs had authorized Kitch to sell their stock; as a result, Brown and Kitch could sell Ridder a majority of the stock. When plaintiffs heard about the offer and discovered that a majority of the shareholders intended to sell, each plaintiff sold his or her stock.[3]

Plaintiffs then brought suit against Kitch and Brown for breach of fiduciary duty. The jury awarded each plaintiff the commission Kitch received for the sale of that plaintiff's stock: $202,500 to Delano, $202,-500 to First National Bank, and $40,500 to Bloom. The jury determined that neither the bank nor Bloom could recover damages from Kitch or Brown based upon Brown's employment contract. The jury also found that Kitch could not have obtained a higher purchase price for the newspaper.

In ruling on posttrial motions, the court vacated the jury's decisions to award Delano $202,500 against Kitch as punitive damages, and to award Bloom $40,500 against Brown as joint liability for Kitch's finder's fee.[4] The trial court ordered a new trial on the claims of punitive damages and joint

1. Ridder offered $40,500,000 with an additional $1,500,000 if earnings reached a certain level by the end of the newspaper's fiscal year. The newspaper met the earnings requirement.

2. Kitch's commission was to be 3% based on a purchase price of $40,500,000. *See* note 1 *supra*.

3. Delano, attempting to negotiate another sale, withheld his acceptance of the offer past Ridder's deadline. Ridder subsequently purchased his shares after Delano agreed to pay expenses Ridder had incurred when Delano attempted to block the sale.

4. All plaintiffs except Bloom settled with Brown.

liability. The court refused to award prejudgment interest and ordered each party to bear his or her own costs.

## I

This is the second time this case comes to our Court after a full trial.[5] In the first trial a jury found for defendants Kitch and Brown. We reversed and remanded for a new trial because of errors in the instructions on Kansas law as it applies to the fiduciary duties of directors and officers. *Delano v. Kitch,* 542 F.2d 550 (*Delano I*), *op. on motion for clarification,* 554 F.2d 1004 (10th Cir. 1976). We there reviewed the many Kansas cases holding directors and officers to a very strict duty of loyalty both to the corporation and to its shareholders and concluded that if the Kansas Supreme Court were to decide the issue, it would find that Kitch and Brown owed fiduciary duties to minority shareholders.

After our opinion in *Delano I* and before the trial on remand, the Kansas Court of Appeals decided *Ritchie v. McGrath,* 1 Kan.App.2d 481, 571 P.2d 17 (1977). Although affirming that directors, officers, and majority shareholders owe strict fiduciary duties, the Kansas Court of Appeals held that majority shareholders do not breach that duty by selling their stock and concomitant control of the corporation, as long as the majority shareholders do not dominate, interfere with, or mislead other shareholders in exercising their rights to sell (hereinafter the control sales doctrine). *Id.* 571 P.2d at 23. Control of a corporation is not a corporate asset, and the majority shareholders are not required to share with the minority shareholders any premium received for control. *Id.* at 25. The court qualified its holding by noting that the sellers would have violated their fiduciary duties if they knew or should have known the purchasers were looters or were likely to mismanage the corporation, or if the sale involved fraud, misuse of confidential information, siphoning off of a business advantage belonging to the corporation or the shareholders in common, or wrongful appropriation of corporate assets. *Id.* at 22. *See also Harman v. Willbern,* 520 F.2d 1333, 1334 (10th Cir. 1975); *McDaniel v. Painter,* 418 F.2d 545, 547–48 (10th Cir. 1969). *Ritchie* did not disagree with *Delano I* but instead found it did not address the duty owed by majority stockholders.[6]

During and after the retrial we ordered in *Delano I,* the trial court expressed concern that the law of the case we set forth in *Delano I* unduly restricted the retrial. The court concluded its posttrial order with the following:

"In trying this case a second time, the court attempted to conscientiously comply in every material respect with the circuit court opinion rendered as to the first trial of this case. *See Delano v. Kitch,* 542 F.2d 550 (10th Cir. 1976). In so doing, this court retains substantial misgivings as to whether a fair trial was accomplished.

"Issues of the utmost significance to the just resolution of this case, including whether the acquiescence of the plaintiff shareholders to the newspaper sale resulted from economic coercion and whether such acquiescence, if uncoerced, constitut-

---

5. Even before the first trial, we dealt with this case when Delano sought to enjoin a meeting of stockholders called to vote on whether to eliminate a right of first refusal provision in the Articles of Incorporation. Elimination of the provision was necessary to clear an obstacle to the Ridder sale. The district court concluded that a vote of shareholders could remove the provision and denied the injunction. Delano appealed, and we issued a temporary order restraining corporate proceedings pending a hearing. After a special hearing, we lifted the temporary injunction. *See Delano v. Kitch,* 554 F.2d 1004, 1005 (10th Cir. 1976).

6. *Ritchie* made the following statement concerning *Delano I*:

"In addition, where an officer or director negotiates a sale of stock where incumbent directors and officers are to resign so to effect a sale of the entire corporation, acts of the directors or officers compelling minority shareholders to sell their shares on terms which personally benefit the directors or officers, may be breaches of fiduciary duty. See *Delano v. Kitch,* 542 F.2d 550 (10th Cir. 1976)."

571 P.2d at 22.

**996**

ed ratification and barred recovery on plaintiffs' part, were decided on appeal as a matter of law on the basis of the first trial's record. The evidence at retrial was substantial and conflicting on these matters and, in the estimation of this court, raised issues of a type appropriate for jury disposition.

"Significant Kansas law was recorded in the decision of *Ritchie v. McGrath* [1 Kan.App.2d 481], 571 P.2d 17 (1977), rendered subsequent to *Delano v. Kitch, supra*, yet its impact was restricted at retrial by the specific law of this case as enunciated in the circuit court's opinion. *Delano v. Kitch, supra.*

"The court instructed the jury as it felt required to do in light of the mandate in this case, and if the verdicts rendered on retrial are appealed, the circuit court is invited to review whether the legitimate purview of the jury was to some extent preempted."

 The trial court misunderstood the effect *Delano I* should have upon the issues before the court on remand. Normally, in conducting the retrial a trial court should follow rulings of law the appellate court previously made. However, the law of the case doctrine is not so rigid as the rule of res judicata, *Southern Ry. v. Clift*, 260 U.S. 316, 319, 43 S.Ct. 126, 127, 67 L.Ed. 283 (1922), and must yield to a controlling decision between the date of the first ruling and the retrial. In this diversity case Kansas substantive law applies. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). In *Chicago, Rock Island & Pac. R.R. v. Hugh Breeding, Inc.*, 247 F.2d 217 (10th Cir.), *cert. dismissed*, 355 U.S. 880, 78 S.Ct. 138, 2 L.Ed.2d 107 (1957), after a federal court decided an issue of Kansas substantive law, the Kansas Supreme Court made a contrary decision on the same issue. Under such circumstances, we said, "it is the duty of the Federal court that still has jurisdiction of the case to conform its decision and judgment to the latest decision of the supreme court of the state." *Id.* at 223. In the absence of a state supreme court ruling, a federal court must follow an intermediate state court de-

cision unless other authority convinces the federal court that the state supreme court would decide otherwise. *E. g., West v. American Tel. & Tel. Co.*, 311 U.S. 223, 237, 61 S.Ct. 179, 183, 85 L.Ed. 139 (1940). Therefore, on retrial the court should have considered *Ritchie's* application to this case. We may, indeed must, reassess Kansas law in light of *Ritchie* to determine whether, pursuant to our remand order in *Delano I*, the trial court gave erroneous instructions that prejudiced the defendants.

## II

Kitch contends that the control sales doctrine of *Ritchie* protected Brown; as representative of a group of Eagle-Beacon stockholders controlling a majority of the shares, Brown could arrange for the sale of the corporation's controlling interest without breaching any fiduciary duty to minority shareholders. Kitch then asserts that the doctrine protects him as well because he was acting as Brown's agent. Moreover, Kitch argues, not only did he breach no fiduciary duty to the plaintiff minority shareholders, but his activities benefitted them by securing for them the right to tender their stock on the same terms as the majority shareholders. Kitch argues that the minority shareholders could have avoided contributing to Kitch's finder's fee merely by declining to sell their stock, and therefore, by tendering their stock with knowledge of his fee arrangement, they ratified his actions and foreclosed any right to claim injury. On this basis Kitch asserts he is entitled to judgment notwithstanding the verdict.

We recognize that in *Ritchie* Kansas adopted the control sales doctrine. But we do not believe that doctrine applies to Kitch. We think that Kansas courts would find Kitch owed a fiduciary duty to the plaintiff shareholders, and that *Delano I* correctly states Kansas law as it applies to Kitch.

 Kansas imposes a strict fiduciary duty of loyalty upon directors and officers. For example, unlike some states, Kansas

requires directors and officers to disclose any information affecting the value of stock before buying stock from or selling stock to a current shareholder. *Blazer v. Black*, 196 F.2d 139, 146 (10th Cir. 1952); *Blakesley v. Johnson*, 227 Kan. 495, 608 P.2d 908, 914 (1980); *Sampson v. Hunt*, 222 Kan. 268, 564 P.2d 489, 492 (1977); *Hotchkiss v. Fischer*, 136 Kan. 530, 16 P.2d 531, 534–35 (1932); *Stewart v. Harris*, 69 Kan. 498, 77 P. 277, 281 (1904). Although the Kansas legislature adopted a new corporate code in 1972, we find no indication that the legislature intended to change the law concerning directors' and officers' duty of loyalty to shareholders. Nor do we find any change in the decisions of the Kansas Supreme Court. For example, that court recently reaffirmed the requirement of disclosure in a direct transaction between a shareholder and a fiduciary. *Blakesley v. Johnson*, 608 P.2d at 914.

Kansas has long recognized that a director has a duty of loyalty to stockholders as well as to the corporation. *See, e. g., Newton v. Hornblower*, 224 Kan. 506, 582 P.2d 1136, 1143–44 (1978); *Stewart v. Harris*, 69 Kan. 498, 77 P. 277, 279 (1904); *Mulvane v. O'Brien*, 58 Kan. 463, 49 P. 607, 612 (1897); *Sargent v. Kansas Midland R. Co.*, 48 Kan. 672, 29 P. 1063, 1069 (1892). In *Stewart* the Kansas Supreme Court quoted approvingly from J. Pomeroy, *Equity Jurisprudence*, as follows:

"[T]he directors and managing officers occupy the position of quasi trustees towards the stockholders alone, and not at all towards the corporation, with respect to their shares of stock. Since the stockholders own these shares, and since the value thereof and all their rights connected therewith are affected by the conduct of the directors, a trust relation plainly exists between the stockholders and the directors, which is concerned with and confined to the shares of stock held by the stockholders. From it arise the fiduciary duties of the directors towards the stockholders in dealings which may affect the stock and the rights of the stockholders therein, and their equitable remedies for a violation of those duties."

69 Kan. at 504, 77 P. at 279–80. The court further relied upon *Oliver v. Oliver*, 118 Ga. 362, 45 S.E. 232 (1903). In *Oliver* the Georgia Supreme Court held that a director owes a fiduciary duty to the individual shareholders, stating that:

"It is conceded that the position which the director occupies prevents him from making personal gains at the expense of the company, or of the whole body of stockholders. But the rule that he is not trustee for the individual shareholders inevitably leads to the conclusion that, while a director is bound to serve stockholders en masse, he may antagonize them one by one; that he is an officer of the company, but may be the foe of each private in the ranks. When it is admitted, as it must be, both from the very nature of his duty and from the rulings of nearly all the cases, that he is trustee for the shareholder, how is it possible, in principle, to draw the line, and say that, while trustee for some purposes, he is not for others immediately connected therewith?"

*Id.* 45 S.E. at 235 *quoted in Stewart*, 69 Kan. at 506–07, 77 P. at 280.

The Kansas cases have variously stated that directors and officers owe "the highest measure of duty, and the most scrupulous good faith," *Thomas v. Sweet*, 37 Kan. 183, 207, 14 P. 545, 557 (1887); *accord, Arkansas Valley Agricultural Soc'y v. Eichholtz*, 45 Kan. 164, 167, 25 P. 613, 614 (1891); that they may not "secure a personal advantage," *Peckham v. Lane*, 81 Kan. 489, 496, 106 P. 464, 467 (1910); and that principles of trust and agency law apply, *Stewart*, 69 Kan. at 505, 77 P. at 280; *Mulvane v. O'Brien*, 58 Kan. at 473, 49 P. at 612; *Thomas v. Sweet*, 37 Kan. at 207, 14 P. at 557. No Kansas court has decided a case precisely like the one before us, and neither has any other court so far as we can ascertain. Kansas courts have required a director-officer to surrender a secret profit he made while serving as agent in the sale of a fellow shareholder's stock, *Mulvane v. O'Brien*, 58 Kan. 463, 49 P. 607 (1897), and

have required a director-officer to disgorge a commission he received from a purchaser of corporate property. *Consolidated Oil, Gas & Mfg. Co. v. Overfield,* 113 Kan. 294, 214 P. 809 (1923).

■ *Ritchie* implicitly recognizes that a director-officer who is a shareholder wears two hats: first, as owner of stock who may sell at the best obtainable price, and second, as fiduciary to the corporation and its shareholders. *Ritchie* holds that the power to control the corporation through majority stock ownership is not a corporate asset which must be shared with all stockholders; in a sale of stock, the role as owner takes precedence over the role as fiduciary. Thus, as a general rule a director, officer, and majority shareholder may freely negotiate a sale at a premium price of his or her stock and the benefits incident to majority ownership: the power to determine who will serve as officers and directors and, through them, the policy of the corporation.

■ While Brown had substantial stock ownership and is entitled to the benefit of *Ritchie*'s control sales doctrine, Kitch owned no stock;[7] *Ritchie* therefore does not apply directly to Kitch. Nevertheless, Kitch argues that his duties as director, assistant secretary, and nonsalaried lawyer did not demand his entire time and skills, and he could sell his time and skills as lawyer and negotiator to Brown or other shareholders. We recognize that Kitch could certainly have done so if he had resigned his corporate positions before he accepted employment with the majority shareholders,[8] or if the services involved no conflict with the interests and desires of the corporation or its shareholders.

Kitch, however, did not resign his positions. He continued as director, officer, and counsel for the newspaper corporation until the sale was consummated. We do not decide whether a director or employee must always give up the position to serve one group of shareholders against another.[9] In the instant case we have the additional element that Kitch served his own interests against the will of the plaintiffs, when he owed them a fiduciary duty.

■ The jury could find Kitch acted for his own pecuniary interest by procuring a finder's fee from Ridder for the sale of the plaintiff shareholders' stock without their consent. He thus violated an established rule that no fiduciary or agent may serve his own interests or those of a third party

7. We do not imply that ownership of "qualifying" shares or a nominal amount of stock would necessarily place Kitch in Brown's position. We also do not imply that if Brown took a commission for himself from Ridder on sales of the minority shareholders' stock he would be shielded from liability by the control sales doctrine of *Ritchie*.

8. Even if he resigned, Kitch could not have used confidential information he had acquired while working for the corporation against the interests of those he previously served. *See Parsons Mobile Products, Inc. v. Remmert,* 216 Kan. 256, 260, 531 P.2d 428, 432–33 (1975).

9. We recognize that corporate shareholders often disagree and a director, officer, or corporate counsel may owe his or her position to one faction. In voting as a member of the board of directors, acting for the corporation at the direction of the board or an officer with authority, or making judgments as an employee, the individual may often act contrary to the wishes of some shareholders. Most disagreements are over corporate policy and hence involve only the fiduciary's duty of due care. These situations are distinguishable from the duty of loyalty, properly defined, owed by a director, officer or employee.

An attorney also has a fiduciary duty of undivided loyalty to his or her client as codified in Canon 5 and the related Ethical Considerations and Disciplinary Rules of the American Bar Association Code of Professional Responsibility. *E. g., Fund of Funds, Ltd. v. Arthur Anderson & Co.,* 567 F.2d 225, 232–33 (2d Cir 1977); *Financial General Bankshares, Inc. v. Metzger,* 523 F.Supp. 744 at 763 (D.D.C.1981). The Kansas Supreme Court and United States District Court for the District of Kansas have adopted the Code.

Plaintiffs rely on *Financial General Bankshares, Inc. v. Metzger,* 523 F.Supp. 744 (D.D.C. 1981), to show that Kitch breached his professional duties under the Code, and argue that we should affirm the jury's verdict on this basis. Plaintiffs, however, did not specifically and separately address at trial Kitch's duties as legal counsel, and we decline to inject the issue of whether the Code should serve as the basis for private litigation into this action.

by accepting a secret commission from the third party. Restatement (Second) of Trusts § 170(1) comment o (1959); Restatement (Second) of Agency § 388 (1957). These principles apply as well to directors and officers. *Consolidated Oil, Gas & Mfg. Co. v. Overfield*, 113 Kan. 294, 214 P. 809 (1923); *Mulvane v. O'Brien*, 58 Kan. 463, 49 P. 607 (1897).

 Kitch argues no violation because the plaintiffs in effect ratified his actions: if he owed a duty to plaintiffs, they consented to his finder's fee by selling their stock; they could have avoided contributing to his fee by simply retaining their stock in the corporation. We treated this situation specifically in *Delano I*, 542 F.2d at 553, and adhere to that position here. Ratification is not effective in favor of the fiduciary and against the beneficiary if the beneficiary must act to protect his or her own interests or acts under duress imposed by the fiduciary. *Cf.* Restatement (Second) of Trusts § 218(2)(c) (1959) (trustee cannot obtain beneficiary's ratification through improper conduct); Restatement (Second) of Agency §§ 101, 462 (1957) (agent cannot force principal to ratify under duress). Plaintiffs acted under duress and to protect their interests. They learned of the contract after a majority had already agreed to it and when they had only ten days to decide whether to participate.[10] If they did not sell, plaintiffs would find themselves in a significantly different position: although still minority shareholders, they would no longer be involved in a family-owned company in which no one person owned a majority, but in a company controlled by a newspaper conglomerate.

Justice (then Judge) Cardozo's oft-cited words describe the duty of a fiduciary as follows:

"Many forms of conduct permissible in a workday world for those acting at arm's length, are forbidden to those bound by fiduciary ties. A trustee is held to something stricter than the morals of the market place. Not honesty alone, but the punctilio of an honor the most sensitive, is then the standard of behavior. As to this there has developed a tradition that is unbending and inveterate. Uncompromising rigidity has been the attitude of courts of equity when petitioned to undermine the rule of undivided loyalty by the 'disintegrating erosion' of particular exceptions."

*Meinhard v. Salmon*, 249 N.Y. 458, 164 N.E. 545, 546 (1928). Perhaps these sentiments declare too strict a standard for the complex demands of corporate business. But our reading of the Kansas cases convinces us that Kansas would proscribe Kitch's conduct toward the plaintiff shareholders and require Kitch to surrender his 3% commission on the sale of their stock.

### III

Kitch maintains that the trial court erred in not granting a new trial because of inconsistent verdicts. The jury found in favor of plaintiffs on their claims that Kitch had breached his fiduciary duty. As directed by the court's instruction that a fiduciary who has violated his duties to his beneficiaries must surrender to them whatever profit he has received, the jury concluded that Kitch must disgorge his commission. The jury also found against plaintiffs on their claims that the newspaper could have been sold for more than it was. Kitch contends that for the jury to be consistent with its verdict returning plaintiffs' portions of the finder's fee, it should have found that the newspaper could have been sold for an additional amount equal to the fee.

 A court will find jury verdicts inconsistent when it cannot fairly harmonize the answers. *Gallick v. Baltimore & O.R.R.*, 372 U.S. 108, 119, 83 S.Ct. 659, 666, 9 L.Ed.2d 618 (1963). We can, however, harmonize the jury's verdicts. Kitch cannot deny that he realized a profit from the sale. Kitch's realization of a profit does not mean that Ridder would necessarily have paid more if there was no finder's fee—evidence was introduced that Ridder regarded the

---

**10.** *See* note 3 *supra.*

finder's fee as a cost unrelated to the purchase price. Alternatively, the jury could have discounted the effect of the finder's fee upon the sales price because it had decided that Kitch must give up his finder's fee on plaintiffs' stock, in effect adding the fee to the price realized by plaintiffs. The jury's findings were not necessarily inconsistent.

 Kitch next focuses upon allegedly erroneous instructions. He claims the court's instruction that the transaction was "a sale of the entire corporation" is inconsistent with placing the burden of proof on Kitch to show that he had complied with his fiduciary duties. Kitch maintains that if the sale were of the entire corporation, a majority of the stockholders could ratify the entire transaction, including his fee, and the burden would fall upon the objecting stockholders to show the transaction was inconsistent with sound business judgment. As we note above, however, this case concerns a fiduciary's duty of loyalty, akin to the duty of an agent not to serve conflicting interests of a third party and not to accept compensation from a third party with whom he contracts on behalf of his principal unless the principal expressly approves. The trial court therefore properly required Kitch to prove he had complied with his fiduciary duty, and the instruction on the sale of the entire corporation was neither necessary nor prejudicial error.

Finally, Kitch complains that the trial was unfair. Kitch complains specifically about the plaintiffs' characterization of the secret sales negotiations as wrongful; the plaintiffs' emphasis on Kitch's failure to pursue a stock-for-stock exchange when minority stockholders have no right to such an exchange; Delano's suggestion that Kitch should be punished for suggesting that Ridder should not make its offer available to Delano; and plaintiffs' emphasis on long-standing family tensions among the shareholders. According to Kitch, these unfair comments and characterizations infected the jury with passion and prejudice against Kitch. Kitch also stresses the trial judge's statements concerning fairness we have quoted from the November 20, 1978 order on posttrial motions as well as the trial judge's statements at oral argument on April 13, 1979.

We note first that the trial judge has granted a new trial on punitive damages and on Brown's liability to Bloom. Kitch's contentions, then, must go to whether the judge should have granted a new trial on his liability for the finder's fee. Kitch's specific complaints do not warrant a new trial on this issue. As we have analyzed Kitch's legal duty to the minority shareholders, the issue is primarily legal. There is no dispute that Kitch retained his position as a director, officer, and legal counsel to the corporation throughout. There is no essential dispute on the other facts relevant to his liability to repay the fee he collected for the sale of plaintiffs' stock. Kitch assumed he owed no fiduciary duty to these shareholders with respect to this transaction or that they effectively ratified his fee arrangement by selling their stock. We have held differently. The trial judge's posttrial statements indicate his primary concern was the conflict he perceived between *Delano I* and *Ritchie*. Since we have determined *Ritchie* does not shield one in Kitch's position, the judge's comments about fairness are not relevant.[11] No new trial on this issue is necessary.

---

11. The trial judge also commented on the inflammatory closing argument by Delano's counsel. The judge thought the argument "inflamed this jury to such a point that they were just geared up to do anything and everything that they thought they could do to Mr. Kitch." (R. XXVI, 37). The April hearing occurred more than seven months after the jury returned its verdict and is the first time the record discloses any concern over the allegedly inflammatory nature of the closing argument made by Delano's counsel. Defendants' counsel made no contemporaneous objection and did not raise the issue in posttrial motions. The trial judge did not caution Delano's counsel at the time of argument or mention his concern over the closing until the April hearing. The trial court gave no specific examples of how or why the closing was inflammatory. We have read the closing arguments, admittedly a cold record, and find counsel's argument zealous but not inflammatory.

## IV

Cross-appellants Delano, Bloom, and First National Bank claim that the trial court's posttrial rulings favoring Kitch and the order granting Brown a new trial are contrary to law and the record and are wholly capricious. In its posttrial orders of November 17, 1978, the trial court refused to award the costs of the action to plaintiffs, assessed no prejudgment interest against Kitch, vacated the punitive damages award against Kitch, and vacated the jury's verdict finding Brown jointly liable with Kitch for Kitch's finder's fee. The court ordered a new trial on the issues of punitive damages and Brown's liability.

■■■■ Regarding the refusal to award costs, Fed.R.Civ.P. 54(d) provides that they "shall be allowed as of course to the prevailing party unless the court otherwise directs . . . ." When a trial court refuses to award costs to the prevailing party, it must state its reasons so that the appellate court will have a basis for judging whether the trial court acted within its discretion. *Serna v. Manzano*, 616 F.2d 1165, 1168 (10th Cir. 1980). The trial court ordered each party to bear its own costs because the defendants prevailed in the first action and the plaintiffs in the second. However, we agree with the plaintiffs that the defendants did not prevail in the first trial inasmuch as this Court reversed the judgment for defendants. The defendant Kitch therefore must pay plaintiffs' costs.

■■■ Plaintiffs also object to the trial court's failure to award prejudgment interest at the rate of 6% per annum from April 30, 1973, to August 31, 1978. The trial court concluded, "Plaintiffs' various claims involve unliquidated damages and do not entitle plaintiffs to prejudgment interest." Under Kansas law, plaintiffs are entitled to prejudgment interest on a liquidated claim. Kan.Stat.Ann. § 16–201. A claim is liquidated "when both the amount due and the date on which it is due are fixed and certain, or when the same become definitely ascertainable by mathematical computa-

tion." *First Nat'l Bank of Girard v. Bankers Dispatch Corp.*, 221 Kan. 528, 562 P.2d 32, 40 (1977).

■■ The record supports the liquidated nature of the claim. As reflected in the pretrial order, plaintiffs claimed definite dollar amounts equal to their proportionate shares of the finder's fee. The trial judge instructed the jury as follows: "If you find from the evidence that the plaintiffs are entitled to damages by reason of the finder's fee paid to Kitch, it is your duty to award each plaintiff his share of the finder's fee paid to Kitch."

The jury determined that Kitch had breached his fiduciary duty to plaintiffs and must give up the profits he had wrongfully gained. Since those damages were a sum certain, the trial court erred in refusing to award interest at 6% per annum from April 30, 1973, to August 31, 1978.

■■ Delano and Bloom appeal the trial court's order granting a new trial on the issues of Kitch's liability for punitive damages and Brown's liability for Kitch's finder's fee. Orders granting a new trial, however, are not final and appealable. *Stradley v. Cortez*, 518 F.2d 488, 491 (3d Cir. 1975); *Kanatser v. Chrysler Corp.*, 195 F.2d 104 (10th Cir. 1952), *cert. denied*, 344 U.S. 921, 73 S.Ct. 388, 97 L.Ed. 710 (1953).[12] Alternatively, Delano and Bloom have asked this Court to treat the "appeals" as applications for leave to file petitions for writs of mandamus pursuant to the All Writs Act, 28 U.S.C. § 1651(a). *See State Farm Mut. Auto. Ins. Co. v. Scholes*, 601 F.2d 1151, 1154 (10th Cir. 1979).

■■ In *Allied Chemical Corp. v. Daiflon, Inc.*, 449 U.S. 33, 101 S.Ct. 188, 66 L.Ed.2d 193 (1981), the Supreme Court reversed *per curiam* our issuance of a writ of mandamus that would have prohibited the trial judge from conducting a new trial. The Court noted that a writ of mandamus should issue only in exceptional circumstances amounting to a judicial usurpation

---

**12.** Brown moved to dismiss Bloom's appeal on this basis. We deferred ruling on the motion and ordered that Brown present this issue at oral argument.

of power. To gain this extraordinary relief, a party must establish the absence of other adequate means to attain the desired relief and a clear and indisputable right to issuance of the writ. The Court then stated:

"A trial court's ordering of a new trial rarely, if ever, will justify the issuance of a writ of mandamus. On the contrary, such an order is not an uncommon feature of any trial which goes to verdict. A litigant is free to seek review of the propriety of such an order on direct appeal after a final judgment has been entered. Consequently, it cannot be said that the litigant 'has no other adequate means to seek the relief he desires.' The authority to grant a new trial, moreover, is confided almost entirely to the exercise of discretion on the part of the trial court. Where a matter is committed to discretion, it cannot be said that a litigant's right to a particular result is 'clear and indisputable.' *Will v. Calvert Fire Ins. Co.*, 437 U.S. 655, 666 [98 S.Ct. 2552, 2559, 57 L.Ed.2d 504] (1978) (plurality opinion)."

*Allied Chemical*, 449 U.S. at 36, 101 S.Ct. at 190. In the case before us, Delano and Bloom have failed to establish that they lack all other adequate means to relief and that they have a clear and indisputable right to issuance of writs of mandamus. Thus, no writs will issue.

## V

Bloom and First National Bank raise several issues in their cross-appeals. Bloom contends the trial court abused its discretion when it permitted Brown and Kitch to withdraw certain admissions they had made several years earlier. In the amended complaint of May 21, 1973, plaintiffs alleged:

"9. In his negotiations and discussions with respect to the sale of the stock of the Company, Brown demanded a long term employment contract substantially in excess of his then current salary with the Company. Brown would not negotiate or discuss in any way the sale of the stock of the Company unless the prospective purchaser agreed to give him the aforesaid employment contract.

"10. . . . Early in the negotiations, Ridder was advised of Kitch's demand for a broker's fee and Brown's demand for a long term employment contract."

In his answer filed May 25, 1973, Brown admitted these allegations. At the second trial in 1978, Brown attempted to introduce evidence contrary to the admissions in the earlier pleadings. The trial court overruled the objection of Bloom's counsel and prohibited him from reading the admissions to the jury at that time.

The trial court subsequently stated that Brown's admissions had been superseded by the pretrial order filed before the second trial, an order that contained no reference to such admissions. The order expressly included among defendants' contentions the following: "The employment contract was a normal contract provision. Ridder, not Brown, was the beneficiary *and the one requiring the provision.*" (Emphasis added.) Thus plaintiffs were on notice that defendants disputed the issue whether Brown demanded the employment contract as a condition precedent to the stock sale.

■ The trial court was right, of course, that the pretrial order supersedes the pleadings. Having failed to object to that order, Bloom and First National Bank cannot object to Brown's testimony in support of the contentions contained in the pretrial order. The trial court subsequently allowed plaintiffs' counsel to read the admissions to the jury "as party admissions and competent evidence, but not as judicial admissions which cannot be controverted." While the attorneys expressed some confusion over whether the statements were "contentions" or "party admissions," the trial court properly instructed the jurors that the statements covered issues they were to resolve.

Bloom also maintains the trial court abused its discretion when it reopened the case to permit surrebuttal by Kitch. At trial Kitch testified that he had narrowed the list of prospective purchasers to four by studying information in the "Securities and Exchange Commission's offices, in their library." Kitch stated he visited that library

in Washington, D. C., for about three days in September or October 1972. On rebuttal plaintiffs produced a list of visitors to the library of the SEC's Headquarters Office for September 8, 1972, through December 19, 1972. Kitch's name was not on the list. Kitch sought surrebuttal to testify concerning the list, but when the plaintiffs objected, the trial court denied the request. After Kitch made a proffer of his evidence out of the hearing of the jury, the court informed the parties and jury that the case was closed and that closing arguments would begin after lunch. That afternoon the court changed its mind and permitted Kitch's surrebuttal and then cross-examination by Delano's counsel.

Reopening a case for additional evidence is within the discretion of the trial court. *Hickok v. G. D. Searle & Co.*, 496 F.2d 444, 447 (10th Cir. 1974); *Nichols v. United States*, 460 F.2d 671, 675 (10th Cir.), *cert. denied*, 409 U.S. 966, 93 S.Ct. 268, 34 L.Ed.2d 232 (1972). The record does not indicate that the court's unexpected change of position prejudiced any party. We hold the trial court did not abuse its discretion by permitting surrebuttal by Kitch.

Bloom asserts the trial court should have granted judgment against Brown notwithstanding the verdict (n. o. v.) because he breached a fiduciary duty to her by demanding an employment contract for himself as a condition precedent to the stock sale. Although First National Bank settled with Brown on this issue, both Bloom and First National Bank contend Kitch is jointly liable with Brown on this claim and ask for the entry of judgment n. o. v. against Kitch.

Judgment n. o. v. is proper only when the evidence so strongly supports an issue that reasonable minds could not differ. *Symons v. Mueller Co.*, 493 F.2d 972, 976 (10th Cir. 1974); *Swearngin v. Sears Roebuck & Co.*, 376 F.2d 637, 639 (10th Cir. 1967). The jury instruction, to which Bloom and First National Bank did not object, was general, asking only that the jury award damages if the employment contract was a breach of fiduciary duty. We must determine if reasonable minds might differ.

Even if Brown insisted upon a continuing employment contract, it is not *per se* a violation of the fiduciary duty of loyalty to other shareholders to negotiate such an agreement as part of a stock sales contract. *See McDaniel v. Painter*, 418 F.2d 545 (10th Cir. 1969). The continued employment of one or more major officers of the corporation "reflect[s] the high concern of all parties that the transaction period be as smooth and businesslike as possible." *Id.* at 548. The employment contract may not be used to defraud; for example, to make continuing shareholders bear part of the stock purchase price. But plaintiffs were not continuing shareholders, and they requested no instructions directed to the reasonableness of Brown's salary, term of employment, or services required.

An employment contract is certainly permissible if the salary paid is reasonable in regard to the services performed. A $65,000 annual salary and a term of nine or ten years is not unreasonable on its face for services as president and chief executive officer of a newspaper which sold for $42,000,000. The contract did not guarantee employment; it was terminable for mental or physical illness, for failure to perform assigned duties properly, or for action adverse to the newspaper's best interests. It required Brown to devote "full productive time, energy and ability" to the corporation's business. Further, the record contains substantial evidence that neither Brown nor Kitch made Brown's continued employment a condition precedent for the stock sale. Ridder's representative in the negotiations with Kitch and Brown testified that the employment contract was not a precondition to the sale. Ridder did not negotiate the employment contract with Brown until after it had agreed on the stock sale's principal terms, and Brown accepted the term and salary first offered by Ridder.

Reasonable minds might differ on whether the employment contract was a breach of fiduciary duty. In view of the

evidence presented and plaintiffs' failure to object to the instruction or to request instructions relating to the reasonableness of the particular contract, the court did not err in denying the motion for judgment n. o. v.

Bloom and First National Bank both urge that the trial court should have granted judgment n. o. v. on the issue of the newspaper's sale price. The jury found that the conduct of Brown and Kitch had not reduced the price Ridder would have paid. Substantial evidence supports the jury's verdict. Several newspaper representatives testified that the Wichita newspaper had brought a high cash price. The evidence does not clearly establish that the employment contract depressed the sales price. According to the testimony, the selling shareholders might have obtained a higher dollar value in a stock-for-stock exchange than in a cash sale. However, there was substantial evidence of serious disadvantages to accepting stock for payment. Because reasonable minds could differ on this issue, the jury's verdict must stand.

With respect to assessment of costs and prejudgment interest, the judgment and orders of the trial court are reversed and remanded with directions to assess costs against Kitch for all proceedings prior to the instant appeal and to require him to pay prejudgment interest on the award in favor of plaintiffs at the legal rate. In all other respects the judgment is affirmed. All parties shall bear their own costs for this appeal except appellee Brown, whose costs shall be paid by cross-appellant Bloom.